

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 4, 2019

**BY ECF**

The Honorable Loretta A. Preska
United States District Court Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

     Re:    *United States v. Daniel Lynch*, 08 Cr. 1051 (LAP)

Dear Judge Preska:

    The defendant in this case, Daniel Lynch, is scheduled to be sentenced on September 11, 2019 at 10 A.M., having pled guilty to five counts of bank robbery, in violation of 18 U.S.C. § 2113(a), one count of attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922 (g) and 924(e).  The Government respectfully submits this letter in advance of the sentencing.  The Probation Department has determined that the United States Sentencing Guidelines range is 262 to 327 months' with a mandatory minimum of 180 months' imprisonment.  This is the same range set out in the defendant's plea agreement with the Government ("Stipulated Guidelines Range").  For the reasons below, the Government submits that a sentence within the Stipulated Guidelines Range is warranted.

### I.    Factual Background

    *Offense Conduct.*  In a span of just over two weeks in the fall of 2008, the defendant went on a robbery spree, successfully committing—or attempting to commit—six distinct robberies in Manhattan and the Bronx.  PSR ¶¶ 16-24.  The defendant successfully robbed three different bank branches on five separate occasions.  *Id.*  He started in the Bronx, successfully targeting a Commerce Bank branch there, before setting his sights on locations in Lower Manhattan.  *Id.* at ¶ 19.  Twice, he robbed a Washington Mutual bank in the East Village.  *Id.* at ¶¶ 17; 20.  And twice he robbed a Commerce Bank branch in the East Village as well.  *Id.* at ¶¶ 22-23.  During each of these robberies, the defendant was armed and used his weapon to threaten bank employees.  *Id.* at ¶¶ 16-24.  In total, defendant stole at least $5,400.  *Id.* at ¶ 24.

    In the midst of these bank robberies, the defendant attempted another particularly brazen theft.  On this occasion, instead of a bank, the defendant targeted a Duane Reade in the West Village.  Unlike with his bank targets, the defendant encountered some resistance:  the cashier at this Duane

Reade refused to hand over any money.  In response to the cashier's resistance, the defendant fired his gun at the cashier but thankfully missed.  *Id.* at ¶ 21.

The complete timeline of the defendant's string of robberies is set forth in the table below:

| Date | Target(s) |
|---|---|
| September 27, 2008 | Washington Mutual Bank (18 West Fordham Road, Bronx, NY 10467).  *Id.* at ¶ 2. |
| October 7, 2008 | Washington Mutual Bank (104 Delancey Street, New York, NY 10002).  *Id.* at ¶ 3. |
| October 11, 2008 | Duane Reade (77 Seventh Avenue, New York, NY 10011).  *Id.* at ¶ 5. |
| October 12, 2008 | Commerce Bank (47 Third Avenue, New York, NY 10003).  *Id.* at ¶ 7. |
| October 16, 2008 | Washington Mutual Bank (104 Delancey Street, New York, NY 10002).  *Id.* at ¶ 9. |
| | Commerce Bank (47 Third Avenue, New York, NY 10003).  *Id.* at ¶ 8. |

*Arrest and Plea.*  The defendant's string of robberies ended when he was arrested by the NYPD on October 17, 2008 for possession of a weapon.  Later investigation tied the defendant to the six robberies defendant was eventually charged with.  *Id.* at ¶ 18.  Eventually, the defendant pled guilty to seven counts (listed above) of a ten-count superseding indictment that was filed on November 8, 2011.  *Id.* at ¶ 12.

Prior to sentencing, defendant moved to be "committed to a suitable facility for care or treatment in lieu of being sentenced to imprisonment" under 18 U.S.C. § 4244 (d).  Dkt. No. 34 at 1.  The Court granted that motion on December 13, 2011 after review of expert reports submitted by defendant's counsel and the Government.  Dkt. No. 38 at 2.  Since then, he has been housed at FMC Devens and CFP Springfield.  PSR ¶ 126.

On August 21, 2018, under 18 U.S.C. § 4244 (e), medical staff at CFP Springfield certified that the defendant had sufficiently recovered to end his commitment and that it was appropriate for the defendant to be sentenced.  *Id.*  The defendant did not challenge this finding.

## II.    Discussion

### 1.   Applicable Law

The Government submits that a sentence within the Stipulated Guidelines Range is appropriate for this defendant.   As the Court is aware, the Sentencing Guidelines provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).   Because the Guidelines are "the product of careful study

based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, Your Honor must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6.

### 2. A Sentence Within the Stipulated Guidelines Range Is Appropriate in this Case

A sentence within the Stipulated Guidelines range is needed, chiefly, to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). A string of five successful armed bank robberies over the course of several days—with a failed armed robbery where the defendant shot a gun sandwiched in—provides adequate proof of the serious public safety threat posed by the defendant. Yet there is even more in the defendant's criminal history. Over the course of his adult life, the defendant has been convicted on fourteen other occasions and arrested several other times. PSR ¶¶ 89-111. Most troublingly, the defendant has three prior convictions for first degree robbery in New York which, by definition, involves the use of force.[1] *Id.* at ¶¶ 99-101. And in at least two of those three prior convictions the defendant followed the same modus operandi he displayed in this case: threatening deadly force with a gun if he did not get what he wanted. *Id.* at ¶¶ 100-101. If there were any questions about the continued safety threat posed by the defendant, those are answered by the "more tha[n] 20 disciplinary infractions" defendant has tallied while incarcerated or committed, including three assault charges. *Id.* at ¶ 14. Simply put, the defendant has time and time again proven his blatant disregard for the law and the public's well-being.

Other Section 3553 factors are implicated here as well. There is a strong need to deter future acts of wanton robbery, especially in a densely populated city such as New York. *See* 18 U.S.C § 3553(a)(2)(B). A lengthy custodial sentence in this case will send a message to others of the steep penalties for robbery. It will also reflect the seriousness of the crime. *See id.* at (a)(2)(A). The defendant threatened and terrorized innocent employees and patrons of businesses on six different occasions. He was also serious about his threats. That was amply demonstrated by the fact that defendant shot a weapon in the crowded environs of Lower Manhattan after his demands were not met. To quote the defendant: "Thank God" nothing further occurred during the defendant's spree. PSR ¶ 29.

Defendant suggests that the Court should *sua sponte* consider a departure under USSG § 5H1.3. That provision suggests "[m]ental and emotional conditions may be relevant in

---

[1] N.Y. Penal Law § 160.15 ("A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: 1. Causes serious physical injury to any person who is not a participant in the crime; or 2. Is armed with a deadly weapon; or 3. Uses or threatens the immediate use of a dangerous instrument; or 4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm….")

determining whether a departure is warranted, if such conditions . . . are present to an unusual degree and distinguish the case from the typical cases covered by the [G]uidelines." USSG § 5H1.3. The defendant offers little evidence that the conduct here is directly linked to his mental health outside of a statement he made to the probation officer that his actions were a "cry for help." PSR ¶ 29. This innocent explanation is belied by the fact that he also told the probation officer that he "was in need of money" and "used the stolen money to pay for food, rent and scratch-off lottery tickets." *Id.* at ¶¶ 28-29. Without a doubt, these robberies were deliberate acts—consistent with defendant's previous criminal conduct—as evidenced by the specific ways the defendant used the stolen proceeds.

Finally, the defendant's commitment under 18 U.S.C. § 4244 does not alter the sentencing calculus. While such a commitment constitutes a "provisional sentence of imprisonment," 18 U.S.C. § 4244 (d), the underlying statutory goal is "care or treatment" of the defendant's "mental disease or defect." 18 U.S.C. § 4244 (a). As the Circuit has explained, this is driven by the need for the defendant to have an "awareness sufficient to understand the nature of the proceeding or to exercise his right of allocution" at sentencing. *Saddler v. United States*, 531 F.2d 83, 86 (2d Cir. 1976); *see also United States v. Wolfson*, 616 F. Supp. 2d 398, 419 (S.D.N.Y. 2008) (JGK) (noting a sentence's "retributive purpose is undermined if it is imposed on a person who fails to understand because of mental illness why it is being imposed"). Section 4244 hospitalization also ensures that a defendant can safely serve his prison sentence and not pose a heightened risk to his fellow inmates because of mental illness. *See United States v. Abou-Kassem,* 78 F.3d 161, 165 (5th Cir. 1996) (noting interests driving Section 4244 are "(1) protecting mentally ill prisoners who might be at substantial risk if placed in the general prison population; (2) ensuring the safety of other inmates; and (3) providing humanitarian treatment for mentally ill inmates").

Commitment under Section 4244, then, is driven by considerations wholly independent of the sentencing factors contained in 18 U.S.C. § 3553. Put differently, Section 4244 is designed to ensure the defendant's capacity to (1) participate in sentencing and (2) serve his term of imprisonment. *See United States v. Gigante*, 996 F. Supp. 194, 201 (E.D.N.Y. 1998) (denying motion for hospitalization because defendant was "competent to fully participate in sentencing hearings" and "to serve a prison sentence"). This preparatory work—undertaken primarily for the defendant's benefit—should not mitigate his ultimate sentencing exposure. This is especially so because the defendant is eligible for "credit toward the service of a term of imprisonment for . . . time he has spent in official detention" from the Bureau of Prisons. 18 U.S.C. § 3585(b)(1); *see also* PSR at 27 (noting "[t]he approximate 11 years that Lynch has remained in custody will be counted toward his sentence").[2] In sum, the time defendant spent while hospitalized should not affect this Court's ultimate sentence.

For all these reasons, a sentence within the Stipulated Guidelines Range of 262 to 327 months' imprisonment would adequately balance the various considerations under 18 U.S.C. § 3553 (a) and achieve the statute's stated objectives.

---

[2] Time spent in commitment under 18 U.S.C. § 4244 (d) is generally credited. *See, e.g., United States v. Roberts*, 915 F.2d 889, 892 (4th Cir. 1990).

Very truly yours,

GEOFFREY BERMAN
United States Attorney for the
Southern District of New York

by: _____
Shiva H. Logarajah
Assistant United States Attorney
(212) 637-2272