UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL LYNCH,

                    Petitioner

          -against-

UNITED STATES OF AMERICA,

                    Respondent.

08-cr-1051 (LAP)
20-cv-7210 (LAP)

<u>OPINION & ORDER</u>

---

LORETTA A. PRESKA, Senior United States District Judge:

     Before the Court is Petitioner Daniel Lynch's ("Mr. Lynch")
motion to vacate, set aside, or correct his sentence pursuant to
28 U.S.C. § 2255.[1]  The Government opposed the motion.[2]  For the
reasons set forth below, Petitioner's motion is denied.

I.   **Background**

     A.   **The Offense Conduct and Pre-Plea Proceedings**

     Over a two-week period in October 2008, Mr. Lynch committed
six separate armed robberies, stealing a total of $5,400.[3]  Mr.
Lynch was arrested in possession of a firearm on October 17,
2008.  (<u>Id.</u> at ¶ 18.)  On October 31, 2008, a grand jury charged

---

[1] (<u>See</u> Mot. to Vacate, dated Aug. 24, 2020 [dkt. no. 65 in
08-cr-1051; dkt. no. 1 in 20-cv-7210]; Supplemental Mem. of Law
in Supp. of Pet'r-Def. Daniel Lynch's Mot. to Vacate ("Mot."),
dated Oct. 15, 2021 [dkt. no. 84 in 08-cr-1051; dkt. no. 8 in
20-cv-7210].)  Unless otherwise stated, all citations to docket
entries refer to 08-cr-1051.
[2] (<u>See</u> Mem. of Law of the U.S. in Opp. to Pet'r Daniel Lynch's
Mot. ("Opp."), dated Dec. 2, 2021 [dkt. no. 90].)
[3] (<u>See</u> Presentence Investigation Report ("PSR"), dated July 9,
2019 [dkt. no. 53] at ¶¶ 17-25.)

Mr. Lynch in an eight-count indictment.  (See dkt. no. 6.)
Shortly after, the case was assigned to the Honorable Barbara S.
Jones.

Mr. Lynch was initially defended by Sarah Baumgartel of the
Federal Defenders of New York.  (See dkt. no. 13.)
Ms. Baumgartel obtained two adjournments so that she could
collect Mr. Lynch's medical records and determine whether he was
competent to proceed with the case.  (See dkt. nos. 13-14.)  On
October 13, 2009, Judge Jones ordered a psychiatric examination
of Mr. Lynch to determine his competency to stand trial.  (See
dkt. no. 15.)  Mr. Lynch was then transferred to Federal Medical
Center Butner for ninety days for further mental health
treatment, and Ms. Baumgartel obtained another adjournment to
continue discussing a plea agreement with the Government.  (See
dkt. no. 24.)

On December 17, 2010, Ms. Baumgartel was terminated as
defense counsel, and was replaced by Criminal Justice Act
("CJA") attorney James DeVita ("Mr. DeVita" and "Counsel").[4]
(See dkt. no. 27.)

The parties submitted expert reports regarding Mr. Lynch's
mental state.  On May 24, 2021, defense expert Dr. Alexander

---

[4] Although Petitioner does not mention Mr. DeVita by name in his
motion, the Court infers from Petitioner's motion that he takes
issue with the conduct of Mr. DeVita, not Ms. Baumgartel.

Sasha Bardey concluded that "Mr. Lynch, at the time of the offense, was suffering from the acute symptoms of schizophrenia and was, as a result, unable to appreciate the wrongfulness of his actions." (See dkt. no. 85, Ex. C.)  However, Dr. Bardey also noted that "Mr. Lynch appeared fit to stand trial," and that he provided answers "suggestive of malingering."  (Id.) Shortly after, on June 2, 2011, Mr. Lynch filed a notice that he intended to rely on an insanity defense at trial.  (See dkt. no. 29.)

On August 31, 2021, Government expert Dr. Stuart B. Kleinman concluded that, while Mr. Lynch did suffer from schizophrenia, that condition "did not cause him to be unable to appreciate (1) the nature and quality of his acts; or (2) the wrongfulness of his acts." (See dkt. no. 85, Ex. D.) Dr. Kleinman based this conclusion on, among other things, Mr. Lynch's recognition that the activities he committed are wrong (id. at 10), his record of chronic manipulation, lying, and malingering (id. at 16-17), his record of previous stealing and robbery (id. at 17-20), the absence of delusional content in his post-arrest confession (id. at 28), and the absence of evidence of delusions in his psychiatric evaluations from the approximate time of his arrest (id. at 29-38).

On September 1, 2011, a superseding indictment was filed against Mr. Lynch charging him with five counts of bank robbery

3

in violation to 18 U.S.C. § 2113; one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951; three counts of using a firearm in connection with a crime in violation of 18 U.S.C. § 924(c); and one count of felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g).  (See dkt. no. 32.)

**B.   The Guilty Plea**

On November 8, 2011, Mr. Lynch pleaded guilty under a plea agreement (the "Agreement") to the five counts of bank robbery, the one count of Hobbs Act robbery, and the one count of being a felon in possession of a firearm.  (See dkt. no. 85, Ex. A.) The Agreement did not include a plea to any of the three counts of using a firearm in connection with a crime in violation of 18 U.S.C. § 924(c).  (See Opp., Ex. A ("Plea Agmt.") dated Oct. 18, 2011 [dkt. no. 90].)  The Agreement included a Sentencing Guidelines range of 262 to 327 months, as well as a mandatory minimum term of imprisonment of fifteen years on the felon-in-possession charge due to Mr. Lynch's three prior convictions for violent felonies.  (See id. at 10.)

The Agreement also included language addressing the issue of competency.  (See id. at 2-3.)  The Agreement stated that "the parties agree that the defendant is currently mentally competent, i.e., he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense."  (Id.)  The Agreement also stipulated

4

that the Government would not oppose a post-plea motion pursuant
to 18 U.S.C. § 4244 by Mr. Lynch "seeking a hearing on the
mental condition of the defendant to determine whether he is
suffering from a mental disease or defect for the treatment of
which he is in need of custody for care or treatment in a
suitable facility."  (Id. at 3.)

   The issue of competence was also addressed in the change of
plea conference on November 8, 2011.  (See dkt. no. 85, Ex. A
at 2-3.)  At this conference, Mr. DeVita stated, "I believe it
is arguable that [the insanity] defense is available, but I
think that given the mandatory minimum sentences in the
superseding indictment, it is more likely that the result to Mr.
Lynch will be appropriate if he proceeds pursuant to a motion
under 4244."  (Id. at 3.)  Counsel also stated that he had no
doubt as to Mr. Lynch's competence to enter a plea at this time.
(Id. at 6.)  The Court similarly concluded that Mr. Lynch was
competent to enter a plea of guilty.  (Id. at 7.)  Mr. Lynch
himself then acknowledged that the insanity defense was
potentially available, but that he wished to plead guilty
regardless.  (Id. at 9.)

   The Court then allocated Mr. Lynch on the fifteen-year
mandatory minimum and Guidelines range of 262-327 months.  (Id.
at 15.)  Mr. Lynch stated that he understood (1) those
sentencing consequences; (2) the terms of the Agreement;

(3) that any predictions as to his sentence could be wrong; and
(4) that no promises had been made to him other than those found
in the Agreement.  (Id. at 15-19.)  The Court accepted the plea,
noting that Mr. Lynch had made "an intentional, well-counseled
decision that he is not going to trial or [pursuing] an insanity
defense."  (Id. at 31.)

### C.   Post-Plea Proceedings

As stipulated in the Agreement, Counsel then filed a motion
pursuant to § 4244.  (See dkt. no. 34.)  18 U.S.C. § 4244
provides that if:

> the court finds by a preponderance of the
> evidence that the defendant is presently
> suffering from a mental disease or defect and
> that he should, in lieu of being sentenced to
> imprisonment, be committed to a suitable
> facility for care or treatment, the court
> shall commit the defendant to the custody of
> the Attorney General.  The Attorney General
> shall hospitalize the defendant for care or
> treatment in a suitable facility.  Such a
> commitment constitutes a provisional sentence
> of imprisonment to the maximum term authorized
> by law for the offense for which the defendant
> was found guilty.

18 U.S.C. § 4244(d).  This statute also provides that the
director of a facility to which a defendant is designated may
certify that the defendant is no longer in need of custody for
care or treatment at that facility, in which case the court
shall proceed to sentencing.  See 18 U.S.C. § 4244(e).

On December 13, 2011, the Court found that Mr. Lynch "is
presently suffering from a mental disease or defect and that he
should, in lieu of being sentenced to imprisonment, be committed
to a suitable facility for care and treatment."  (See dkt.
no. 38.)  Mr. Lynch was transferred to Federal Medical Center
Devens and the United States Medical Center for Federal
Prisoners Springfield ("USMFCFP Springfield"), where he incurred
more than 20 disciplinary infractions.  (See PSR at ¶ 14.)
These infractions included two charges for possessing a
dangerous weapon or hazardous tool, three charges of assault
with serious injury or fighting, and two charges of making a
sexual proposal or threat.  (Id.)  Mr. Lynch admitted to
Probation that he committed a number of these infractions on
purpose in hopes of being transferred to another medical
facility.  (Id. ¶ 15.)

On May 8, 2015, the case was reassigned to this Court.
(See dkt. no. 40.)

Over three years later, on August 21, 2018, Dr. Desiree
Rozier of the Bureau of Prisons ("BOP") reported that
"[Mr. Lynch] has been stable on his current medication regimen
for quite some time . . . [i]t appears that the defendant is
recovered to a level where he is appropriate to return to court
for sentencing."  (See dkt. no. 85, Ex. G at 10.)  Dr. Rozier
acknowledged that Mr. Lynch had displayed behavioral problems

but noted that, by Mr. Lynch's own admission, these behaviors
were purposeful so that he could be transferred to another
facility.  (Id.)  Dr. Rozier recommended that Mr. Lynch maintain
medication compliance in order to sustain his current level of
functioning.  (Id.)  USMFCFP Springfield's Warden similarly
certified that Mr. Lynch had sufficiently recovered from his
mental disease and that facility care was no longer necessary.
(Id. at 1.)

    At the January 30, 2019 conference addressing BOP's
certification of Mr. Lynch's recovery, Mr. DeVita stated, "I do
not have reservations regarding Mr. Lynch . . . . He is clearly
coherent and has expressed his wish to be sentenced . . . . I
have no reason to question what the report indicates about his
recovery."  (See dkt. no. 49 at 4-5.)  Mr. DeVita sought a
sentence of the mandatory minimum term of imprisonment of
fifteen years.  (See dkt. no. 57 at 8.)  This request was
substantially below the Agreement's Guidelines range of 262 to
327 months.  (Id. at 3.)  In seeking this reduced sentence,
Mr. DeVita pointed to the BOP's determination that Mr. Lynch had
sufficiently recovered from his mental disease and argued that
this recovery "would strongly suggest that the mental illness
that led to his crime spree is under control."  (Id. at 5.)  At
the sentencing proceeding held on September 11, 2019, Mr. DeVita
again referenced the negotiations that amounted to the Agreement

and § 4244 motion.  He reminded the Court that "[t]he Section 4244 [motion] was a compromise that the government and defense worked out so that it didn't require a trial to litigate with a battle of the experts . . . Dr. Kleinman disputed that [Mr. Lynch's mental illness] . . . rose to the sufficient level to make it an adequate defense."  (See dkt. no. 62 at 4-5.)  "[T]he government and I came to the conclusion that a humane way to deal with it was to have Mr. Lynch determined to be so mentally ill that he couldn't be sentenced, and no one disputed that." (Id.)

### D.   The Instant Motion

Eight years after Mr. Lynch entered his plea, the Court sentenced him to 262 months of imprisonment.  (Id. at 10.)  On September 3, 2020, Mr. Lynch filed a pro se § 2255 petition to vacate his sentence.  (See dkt. no. 65.)  On September 9, 2020, the Court appointed Susan J. Walsh to represent Mr. Lynch.  (See dkt. no. 69.)

## II. Legal Standards

### A.   Motion to Vacate

Under 28 U.S.C. § 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the grounds, inter alia, that the "sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral

attack." 28 U.S.C. § 2255(a).  On a Section 2255 motion, the
defendant bears the burden of proof by a preponderance of the
evidence.  See Triana v. United States, 205 F.3d 36, 40 (2d Cir.
2000).

**B.   Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel,
Petitioner must (1) illustrate that Counsel's conduct fell below
the "objective standard of reasonableness," and
(2) "affirmatively prove prejudice."  Rodriguez v. United
States, No. 10 CIV. 5259 (KTD), 2011 WL 4406339, at *2 (S.D.N.Y.
Sept. 22, 2011) (quoting Strickland v. Washington, 466 U.S. 668,
693-94 (1984)).  "[A] Court must indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable
professional assistance."  Strickland, 466 U.S. at 689.  The
question is not whether the attorney in question adhered to the
best practices or customs.  Harrington v. Richter, 562 U.S. 86,
105 (2011).  Rather, the relevant query is whether the
"attorney's representation amounted to incompetence under the
prevailing professional norms."  Id. (internal quotation marks
omitted).  Prejudice is established if Petitioner demonstrates
that "there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different."  Strickland, 466 U.S. at 694.  "[N]ot every
error that conceivably could have influenced the outcome

10

undermines the reliability of the result of the proceeding." Id. at 693.

In the context of trial strategy, courts must "accord proper weight to the role of defense counsel in fashioning an overall trial strategy." United States v. Plitman, 194 F.3d 59, 64 (2d Cir. 1999). On the issue of defense counsel's decision to call or not call certain witnesses, "selection of an expert witness is a paradigmatic example of the type 'strategic choic[e] that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'" Hinton v. Alabama, 571 U.S. 263, 275 (2014) (quoting Strickland, 466 U.S. at 690); see also Harrington, 562 U.S. at 107 (rejecting an ineffective assistance claim based on counsel's failure to call an expert witness because "[c]ounsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies"). Courts must avoid the temptation to "second-guess counsel's assistance after a conviction or adverse sentence." Strickland, 466 U.S. at 689.

III.  **Discussion**

Mr. Lynch argues that Counsel provided ineffective assistance for (1) pursuing a plea in 2011 rather than arguing an insanity defense at trial, and (2) failing to challenge the BOP's certification that he had sufficiently recovered from his

11

mental illness and was prepared to proceed to sentencing.  (See Mot.)  The Court discusses each argument in turn.

### A.   Counsel Was Not Ineffective in Reaching a Plea Agreement Rather Than Pursuing an Insanity Defense at Trial

Mr. Lynch presents two theories to support his argument that Counsel was ineffective for agreeing to a plea rather than pursuing an insanity defense at trial.  Mr. Lynch argues first that Counsel's decision to "bargain away" the insanity defense in exchange for the plea was itself an unreasonable and ineffective choice.  (Mot. at 10.)  Mr. Lynch argues second that he did not in fact understand the terms of the Agreement and was "deceived" into agreeing to it.  (Id.)

### 1.   Counsel's Decision to Pursue a Plea Agreement Rather than the Insanity Defense

With regard to Mr. Lynch's first argument, Counsel's decision to enter into the Agreement did not amount to ineffective assistance because the decision was thoroughly investigated and reasonable.  "[S]trategic choices made after [a] thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  Strickland, 466 U.S. at 690-91.  Here, both Ms. Baumgartel and Mr. DeVita examined the possible strategy of pursuing the insanity defense. Ms. Baumgartel originally reached out to Dr. Bardey to evaluate Mr. Lynch's competence, and this effort was continued by

Mr. DeVita after he replaced Ms. Baumgartel.  (See Pet'r.
Ex. C.)  It was only after receiving Dr. Bardey's report-which
was based on several meetings with Mr. Lynch and decades of his
psychiatric records-that Mr. DeVita filed notice that he
intended to rely on an insanity defense at trial.  (See id.;
dkt. no. 29.)  Mr. DeVita's commissioning of an expert report on
Mr. Lynch's mental state before indicating that he would assert
the insanity defense stands as a "thorough investigation" of the
potential insanity defense.

     With regard to reasonableness, Mr. DeVita explained his
reasoning for bargaining the potential insanity defense for a
plea agreement.  During the plea conference, Mr. DeVita stated,
"I believe it is arguable that [the insanity] defense is
available, but I think that given the mandatory minimum
sentences in the superseding indictment, it is more likely that
the result to Mr. Lynch will be appropriate if he proceeds
pursuant to a motion under [§] 4244."  (Dkt. no 85, Ex. A at 3.)
Mr. DeVita explained that this course of action is preferable to
"attempt[ing] to carry a burden of proof by clear and convincing
evidence before a jury or before the court on guilt or non-
guilt" (id.).  See 18 U.S.C. § 17 (in asserting the insanity
defense, a defendant must prove by clear and convincing evidence
that he "as a result of a severe mental disease or defect, was

13

unable to appreciate the nature and quality or the wrongfulness of his acts").

Counsel's reasoning for not pursuing the insanity defense was further reinforced by the fact that the Government's expert, Dr. Kleinman, was prepared to testify that Mr. Lynch was able to understand the wrongfulness of his acts.  (See dkt. no. 85, Ex. D.)  Furthermore, the defense's own expert admitted that Mr. Lynch provided answers "suggestive of malingering."  (Id., Ex. C.)  Thus, Mr. DeVita reasonably concluded that there was a substantial risk that the insanity defense would fail at trial.

Mr. Lynch attempts to undermine Counsel's decision by pointing to other factors that Mr. DeVita should have considered, such as "the absence of any other defense and the obviousness of the Defendant's history of mental illness." (Mot. at 10.)  However, "the court's central concern is not with grading counsel's performance, but with discerning whether . . . the result of a particular proceeding is unreliable because of a breakdown in the adversarial process."  United States v. Aguirre, 912 F.2d 555, 560-61 (2d Cir. 1990) (internal quotation marks and citations omitted).  The Court cannot so conclude. Thus, the Court denies Petitioner's claim for ineffective assistance of counsel because Counsel thoroughly investigated a potential insanity defense and reasonably reached the strategic

conclusion that such a defense was less advantageous to Mr. Lynch than a plea agreement.

> 2.   Petitioner's Understanding of the Plea Agreement's Terms

With regard to Mr. Lynch's second argument, the record demonstrates that he entered into the Agreement knowingly and voluntarily.   Mr. Lynch focuses this argument on assertions that (1) the decision to surrender the insanity defense was "without [his] knowing consent," and (2) that he believed that the Agreement categorically meant he could not be sent to prison. (Mot. at 9-10.)

Here, the record contradicts both of Mr. Lynch's claims. During the plea conference, the Court confirmed with Mr. Lynch that he wanted "to go ahead and plead guilty as opposed to go to trial and defend [himself] with an insanity defense." (Dkt. no. 85, Ex. A at 7.)   The Court further confirmed that Mr. Lynch understood that this guilty plea meant he would not have an opportunity to defend himself by saying to a jury that he was not sane when he committed these crimes.   (Id. at 8.)   Even after having these facts explained to him, Mr. Lynch still responded that he wished to go ahead with the guilty plea.   (Id. at 8-9.)   Thus, there can be no argument that Mr. Lynch did not understand that the Agreement required his waiver of the insanity defense.

Mr. Lynch's claim that he was unaware of the possibility that he could be sent to prison is similarly without merit. Mr. Lynch seems to argue that the § 4244 motion "effectively deceived" him into believing that he would be hospitalized in lieu of imprisonment at a penitentiary. (Mot. at 10.) This argument is implausible considering the facts. At the plea conference Mr. Lynch was reminded of the Court's discretion "after tak[ing] into account the guidelines as well as the other statutory considerations, to sentence [him] to any period of incarceration from 15 years to life in prison." (Id. at 16.) Mr. Lynch acknowledged that the Court had this discretion, as well as that "[n]o one can tell [him] or give [him] any assurance of what [his] sentence will be, because it cannot be determined until after the probation office does the presentence report." (Id. at 17.) The Agreement held only that the Government would not oppose a § 4244 motion, not that it would guarantee Mr. Lynch would be hospitalized in lieu of imprisonment.

Facts following the change of plea conference further reinforce Mr. Lynch's understanding of the Agreement. At the January 30, 2019 pre-sentencing conference, Counsel-while in Mr. Lynch's presence-said, "I have met with Mr. Lynch twice . . . and he prefers to go ahead with sentencing." (Dkt. no. 49 at 5.) Mr. DeVita's conduct, when coupled with the record

16

detailed above, certainly cannot be said to amount to
"incompetence under the prevailing professional norms."
Harrington, 562 U.S. at 105 (internal quotation marks omitted).
Thus, the record dictates that Mr. Lynch plead guilty knowingly
and voluntarily.  Accordingly, the Court denies this claim for
ineffective assistance of counsel.

### B.   Counsel's Failure to Challenge the BOP's Certification Does Not Fall Below the Objective Standard of Reasonableness

With regard to Mr. Lynch's second argument, Counsel's
decision not to challenge the BOP's certification was reasonable
in light of (1) the Petitioner's own desire to proceed to
sentencing, and (2) the strategic benefits of proceeding to
sentencing.

As a preliminary matter, the record indicates that Mr.
Lynch himself wanted to proceed to sentencing and thus would not
have wanted to challenge the BOP's certification.  (See Def. Ex.
G [dkt. no. 85] at 6.)  In the BOP report certifying Mr. Lynch's
recovery, Dr. Rozier stated that Mr. Lynch "has expressed a
desire to return to court for sentencing."  (Id.)  This desire
was reiterated by Counsel, while in Mr. Lynch's presence, at the
pre-sentencing conference.  There, Mr. DeVita stated that "[Mr.
Lynch] has expressed his wish to be sentenced . . . he prefers
to go ahead with sentencing."  (Dkt. no. 49 at 4-5.)  Thus,
Counsel is not ineffective for failing to challenge a

certification critical to the Defendant's desire to proceed to
sentencing rather than remain in custody at the Medical Center.

Even beyond the Defendant's desire to proceed to
sentencing, Counsel had strong strategic reasons to forgo
challenging the BOP's certification.  At the time, Mr. Lynch was
serving a "provisional sentence of imprisonment to the <u>maximum
term authorized by law</u> for the offense for which the defendant
was found guilty" at a suitable facility pursuant to his § 4244
motion.  18 U.S.C. §4244(e) (emphasis added).  Due to his three
previous violent felony convictions, Mr. Lynch faced a statutory
maximum term of imprisonment for life.  (<u>See</u> dkt. no. 85, Ex. A
at 12-13.)  Had the defense challenged the certification, and
succeeded on that challenge, Mr. Lynch would have continued to
serve that term of imprisonment for life in a BOP facility.
Thus, declining to challenge this certification, in light of the
legal consequences of a successful challenge, was a "strategic
choice[] made after thorough investigation of law and facts
relevant to plausible options."  <u>Strickland</u>, 466 U.S. at 690-91.

Counsel's strategic choice not to challenge the
certification was also reasonable because the certification was
critical to the defense's argument in its sentencing submission.
In that submission, Counsel argued that the certification "would
strongly suggest that the mental illness that led to [Mr.
Lynch's] crime spree is under control, and that with the proper

18

supervision and mental health assistance, he could return to society and not pose the danger he once did." (Dkt. no. 57 at 6.) Thus, Counsel's decision not to challenge the certification was reasonable as a matter of strategy, where Counsel fashioned the defense sentencing submission around the validity of the certification.

In attempting to cast doubt on Counsel's conduct, Mr. Lynch argues that Counsel was ineffective because "[t]he result [was] that Mr. Lynch has been detained in a maximum security penitentiary since sentencing." (Mot. at 11.) Again, Mr. Lynch's argument attempts to grade Counsel's performance rather than discern whether there was "a breakdown in the adversarial process." Aguirre, 912 F.2d at 560-61. Mr. Lynch overlooks the fact that "[t]here are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689.

Mr. Lynch also seeks to undermine Counsel's effectiveness by pointing out the failure to call an expert witness to oppose the BOP's certification. (Mot. at 14-15.) In so arguing, Mr. Lynch makes much of the fact that "[h]ad an expert been again consulted he could have provided relevant and helpful testimony concerning whether in fact the Defendant had . . . finally overcame his mental illness, or whether in fact he had not." (Id. at 14.) However, "selection of an expert witness is a paradigmatic example of the type 'strategic choice[] that, when

made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'" <u>Hinton v. Alabama</u>, 571 U.S. 263, 275 (2014) (quoting <u>Strickland</u>, 466 U.S. at 690).  Moreover, Counsel is permitted to make a reasonable decision that makes particular investigations unnecessary.  <u>See</u> <u>Swaby v. New York</u>, 613 F. App'x 48, 50 (2d Cir. 2015).  Here, Counsel stated that he had "no reason to question what the [BOP] report indicates about [Mr. Lynch's] recovery."  (Dkt. no. 49 at 4-5.) Furthermore, as discussed above, there were significant strategic benefits that weighed against challenging the BOP's certification, and Mr. Lynch himself wished to proceed to sentencing.  Thus, Counsel had made a reasonable strategic choice not to challenge the BOP's certification, and further investigation of how an expert witness could aid in such a challenge was unnecessary.

## IV.  <u>Conclusion</u>

For the foregoing reasons, Petitioner's motion to vacate his sentence (dkt. nos. 65, 84) pursuant to 28 U.S.C. § 2255 is DENIED.

The Clerk of the Court is directed to close the open motions.  (Dkt. nos. 65, 84 in 08-cr-1051; dkt. nos. 1, 8 in 20-cv-7210.)  The Clerk of the Court shall mail a copy of this order to Petitioner.

**SO ORDERED.**

Dated:      New York, New York
            July 25, 2022

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge